# 24-1780-cv

## United States Court of Appeals

*for the*

## Second Circuit

DCC PROPANE, LLC,

*Plaintiff-Appellant,*

— v. —

KMT ENTERPRISES, INC.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

## BRIEF FOR PLAINTIFF-APPELLANT

DAVID J. MONZ
GERALD T. GIAIMO
UPDIKE, KELLY & SPELLACY, P.C.
*Attorneys for Plaintiff-Appellant*
One Century Tower
265 Church Street, Suite 1001
New Haven, Connecticut 06510
(203) 786-8300

CP COUNSEL PRESS    (800) 4-APPEAL • (332153)

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the Plaintiff-Appellant DCC Propane, LLC (hereinafter "DCC") certifies that DCC is a limited liability company organized under the laws of the State of Delaware, with a principal place of business in the State of Illinois, and is wholly owned by DCC plc, a company that is publicly traded on the London Stock Exchange.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT............................................i

TABLE OF AUTHORITIES ..........................................................iii

JURISDICTIONAL STATEMENT ...................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW .............2

STATEMENT OF THE CASE ........................................................3

STANDARD OF REVIEW............................................................5

SUMMARY OF THE ARGUMENT .................................................6

ARGUMENT ............................................................................8

I.    DCC's Claims Are Consistent With This Court's Holding In *Buono* ..........................................................................8

II.   The District Court Erred In Its Interpretation of *Buono* And Improperly Dismissed DCC's Claims ...................................15

     A.    The District Court improperly interpreted *Buono* ...............15

          1.    The particular common law mental state requirements do not sweep more broadly than what is required by Federal law ...................................17

          2.    The District Court's reading of Buono conflicts with the proper interpretation of the preemption provision of the HMTA .............................19

     B.    The District Court's interpretation of Buono would cast the Second Circuit as an outlier amongst the other circuits.........................................................21

III.  The District Court's decision yields an unworkable result that forces individuals and private businesses to self-insure against property damage...................................30

CONCLUSION ..........................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................5

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ...............................................................5

*Buono v. Poseidon Air Systems, et al.,*
  2022 WL 744050 (S.D.N.Y. March 11, 2022) ......................21

*Buono v. Tyco Fire Products, LP,*
  78 F.4th 490 (2d. Cir. 2023) ........................................ *passim*

*Clark v. Velsicol Chemical Corp.,*
  944 F.2d 196 (4th Cir. 1991), *cert. denied,* 502 U.S. 1096 (1992)........27

*Diehl v. CSX Transportation, Inc.,*
  349 F. Supp. 3d 487 (W.D. Pa. 2018)...................................23

*DiFolco v. MSNBC Cable L.L.C.,*
  622 F.3d 104 (2d. Cir. 2010).................................................16

*Galjour v. General American Tank Car Corp.,*
  1991 WL 121193 (E.D. La. 1991).........................................27

*Gray v. Powell,*
  314 U.S. 402 (1941) ..............................................................15

*Green v. Dep't of Educ. of City of New York,*
  16 F.4th 1070 (2d. Cir. 2021) .................................................5

*Henderson v. GATX Corp.,*
  2012 WL 12905101 (M.D. Fla. Mar. 22, 2012) ..............29, 30

*In re East Palestine Train Derailment,*
  2024 WL 1094616 (N.D. Ohio March 13, 2024) ..................24

*In re Montreal Maine & Atlantic Railway, Ltd.,*
  574 B.R. 381 (Bankr. D. Me. 2017), *leave to appeal denied,*
  *Canadian Pacific Railway Co. v. Keach,* 2017 WL 4845733
  (D. Me. Oct. 26, 2017)...........................................................29

*In The Matter Of: Mountain States Trailer, Inc.*,
(U.S. DOT No. 1010685) 2013 WL 7086986 ........................................ 19

*Key v. Liquid Energy Corp.*,
906 F.2d 500 (10th Cir. 1990) ......................................................... 22

*Loper Bright Enterprises v. Raimondo*,
144 S. Ct. 2244 (2024) .................................................................... 14

*Merrit v. BASF Corporation*,
2023 WL 3230983 (S.D. Ohio May 3, 2023) .................................. 25, 26

*Muto v. CBS Corp.*,
668 F.3d 53 (2d Cir. 2012) ................................................................. 5

*National Power Corporation v. FAA*,
864 F.3d 529 (7th Cir. 2017) .............................................................. 26

*NLRB v. Hearst Publications, Inc.*,
322 U.S. 111 (1944) .......................................................................... 15

*Ordner ex rel. Ordner v. K-H Corp.*,
74 F. Supp. 2d 150 (D. R.I. 1999) ............................................ 27, 28, 29

*Poliskie Line Oceaniczne v. Hooker Chem. Corp.*,
499 F. Supp. 94 (S.D.N.Y. 1980) ................................................. 21, 22

*Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*,
637 F.3d 169 (2d Cir. 2011) ................................................................ 5

*Riley v. Alabama Great Southern R.R. Co.*,
2002 WL 31175209 (E.D. La. Sept. 27, 2002) .................................... 26

*Roth v. Norfalco*,
651 F.3d 367 (3d Cir. 2011) ............................................ 18, 22, 23, 24

*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944) .......................................................................... 14

*Sweet v. Sheahan*,
235 F.3d 80 (2d Cir.2000) ................................................................... 5

*Tipton v. CSX Transp., Inc.*,
2016 WL 11501426 (E.D. Tenn. July 7, 2016) .................................... 25

iv

*Whitfield v. Triad Transport, Inc.*,
   2008 WL 139082 (E.D. Ark. Jan. 10, 2008)..........................................26

*Wyeth v. Levine*,
   555 U.S. 555 (2009) ..............................................................................12

## Statutes & Other Authorities:

28 U.S.C. § 1291...............................................................................................1

28 U.S.C. § 1332.........................................................................................1, 4

49 U.S.C. § 5101...............................................................................2, 8, 30

49 U.S.C. § 5103(a) .......................................................................................11

49 U.S.C. § 5103(b) .......................................................................................11

49 U.S.C. § 5123................................................................................... *passim*

49 U.S.C. § 5123(a) .......................................................................................16

49 U.S.C. § 5125.........................................................................................2, 9

49 U.S.C. § 5125(a) ...................................................................................9, 28

49 U.S.C. § 5125(a)(1)...................................................................................28

49 U.S.C. § 5125(b) ...............................................................4, 10, 15, 28

49 U.S.C. § 5125(b)(1)................................................................10, 14, 21

49 U.S.C. § 5125(b)(1)(B)............................................................................15

49 U.S.C. § 5125(d) .......................................................................................12

49 U.S.C. § 5125(h) .......................................................................................24

49 C.F.R. § 1.97(b) .........................................................................................13

49 C.F.R. § 107.202(d) ..................................................................................16

49 C.F.R. § 171.1..............................................................................................13

49 C.F.R. § 171.1(a) .......................................................................................12

49 C.F.R. § 171.1(b) .......................................................................................12

49 C.F.R. § 171.1(c).........................................................................................12

v

49 C.F.R. § 171.2(f) ..................................................... 29

49 C.F.R. § 177.834 ................................................... 15

49 C.F.R. § 178.65 .................................................... 14

49 C.F.R. Parts 171 through 180 ................................ 11

Fed. R. App. P. 3(a) ................................................... 1

Fed. R. App. P. 4(a) ................................................... 1

Fed. R. App. P. 28(a)(4) ............................................. 1

Fed. R. Civ. P. 12(b)(6) .............................................. 4

*Brief of Defendant-Appellee, Buono v. Tyco Fire Products, LP*,
    2022 WL 16543893 (Oct. 18, 2022) ...................... 20

Common Law Tort Claims Concerning Design and Marking of
    DOT Specification 39 Compressed Gas Cylinders ("Preemption
    Determination–34"), 77 Fed. Reg. 39567-01, 2012 WL
    2521268 ........................................................ 13, 14, 19

H. Report No. 101–444, Part 1, Committee on Energy and
    Commerce (Apr. 3, 1990) (1990 WL 259162) .................. 18

Hazardous Materials: Formal Interpretation of Regulations,
    63 Fed. Reg. 30411, 1998 WL 284793 ....................... 19

vi

# JURISDICTIONAL STATEMENT

Pursuant to Federal Rules of Appellate Procedure 28(a)(4), DCC hereby submits the following jurisdictional statement.

It is uncontested that subject matter jurisdiction is conferred by 28 U.S.C. §§ 1332, *et seq*. (diversity of citizenship). Both DCC (Plaintiff-Appellant) and KMT (Defendant-Appellee) are incorporated in and have a principal place of business in different states. Joint Appendix ("JA"), JA-8. It is also uncontested that both personal jurisdiction and venue are proper in the District of Connecticut.

This Court has jurisdiction based on 28 U.S.C. § 1291 for appeals from final decisions of the District Court. The District Court's order from which DCC has appealed is a final decision that disposed of all of DCC's claims, which therefore qualifies for jurisdiction of this Court under 28 U.S.C. § 1291.

Appellants must file a notice of appeal within thirty (30) days after entry of the judgment or order appealed from. *See* Federal Rules App. Proc. 3(a) and 4(a). The District Court's order was entered on June 11, 2024. JA-6. DCC's Notice of Appeal was timely filed fifteen (15) days later on June 27, 2024. JA-87.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

DCC submits the issues as follows:

1.     Did the District Court misinterpret this Court's decision in *Buono v. Tyco Fire Products, LP*, 78 F.4th 490 (2d. Cir. 2023), and err in finding that the Hazardous Materials Transportation Act, 49 U.S.C. § 5101, *et seq.*, preempted DCC's common law claims?

2.     Should this Court revisit its decision in *Buono v. Tyco Fire Products, LP*, 78 F.4th 490 (2d. Cir. 2023) to clarify its dicta and determine that the mental state required for common law negligence and recklessness claims is substantially the same as that required for violations of the Hazardous Materials Transportation Act, 49 U.S.C. § 5101, *et seq.*, a finding which is consistent with both the legislative history and Preemption Determinations by the Pipeline and Hazardous Materials Safety Administration (*see* 49 U.S.C. § 5125 *et seq.*)?

## STATEMENT OF THE CASE

DCC respectfully submits this brief in support of its appeal of the order of the U.S. District Court for the District of Connecticut (the "District Court") dismissing the claims for negligence and recklessness contained in its July 19, 2023, complaint ("Complaint").

This appeal involves property damage caused by a significant heating oil spill. On or about February 15, 2022, KMT made a commercial delivery of approximately 10,000 gallons of No. 2 heating oil ("Heating Oil") to DCC's facility in Putnam, Connecticut (the "Premises"). JA-10, Compl., ¶¶ 5, 8. The Premises includes several aboveground storage tanks for Heating Oil and other distillate products such as propane. JA-10, Compl. ¶¶ 5, 6. During the offload of Heating Oil from the KMT tanker truck, a KMT employee overfilled DCC's aboveground storage tank, which caused the Heating Oil to spout from the tank onto the ground below. JA-10, Compl. ¶ 9. Despite the regulatory requirement that the KMT delivery driver monitor the offload, the gentleman sat inside the cab of the tanker truck while the aboveground storage tank overflowed for at least seven minutes. JA-10, Compl. ¶¶ 5, 6, 9, 10. The overflow of Heating Oil permeated the soil

beneath the aboveground storage tank. JA-10, Compl. ¶ 11. As a result of KMT's negligent conduct, DCC has suffered and continues to suffer significant damages by way of emergency response and remediation costs, which are in excess of $500,000.00. JA-11, Compl. ¶ 13.

DCC filed a lawsuit against KMT in the District Court based on diversity jurisdiction, 28 U.S.C. § 1332, which alleges common law negligence and recklessness. DCC seeks compensation from KMT for property damage resulting from a spill of Heating Oil. KMT filed a motion to dismiss pursuant to Federal Rules of Procedure 12(b)(6) arguing, in relevant part, that the Hazardous Materials Transportation Act ("HMTA"), specifically 49 U.S.C. § 5125(b), preempts DCC's claims. The District Court *(Nagala, J.)* granted KMT's motion to dismiss ("Decision"). *See* JA-69, Decision. The District Court relied principally on the Second Circuit's decision in *Buono v. Tyco Fire Products, LP*, 78 F.4th 490 (2d Cir. 2023) and reasoned that DCC's negligence and reckless claims under Connecticut common law require a plaintiff to prove a mental state (mens rea) that is not substantially similar than the mental state prescribed by the HMTA. DCC appeals the District Court's decision granting KMT's motion to dismiss.

4

## STANDARD OF REVIEW

Courts apply a *de novo* review of a "a district court's grant of a motion to dismiss, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the plaintiffs." *Muto v. CBS Corp.*, 668 F.3d 53, 56 (2d Cir. 2012). A district court's legal conclusions are likewise reviewed de novo. *Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 173 (2d Cir. 2011). The Second Circuit will also accept "all factual allegations in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Green v. Dep't of Educ. of City of New York*, 16 F.4th 1070, 1076 (2d Cir. 2021) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir.2000).

## SUMMARY OF THE ARGUMENT

DCC's claims against KMT are consistent with the Second Circuit's decision in *Buono* and should not be preempted. DCC alleges violations of duties prescribed by the HMTA that support its common law tort claims. Provided that plaintiffs do not allege duties that *exceed* the duties prescribed by the HMTA, tort claims are not preempted. DCC's position is supported by the federal agency charged by Congress with issuing preemption determinations, the Pipeline and Hazardous Materials Safety Administration. In dismissing DCC's claims, which alleged violations of the HMTA, the District Court misinterpreted and misapplied *Buono*.

The District Court also erred in holding that the mental state prescribed for enforcement of the HMTA is different than the mental state required to prove State common law tort claims. To the extent that HMTA § 5123 applies to private causes of action, it does not prescribe a mental state that is different than that imposed by tort claims. DCC's position is supported by the legislative history of the HMTA, which noted that the HMTA standard is equivalent to a negligence standard.

6

The District Court's Decision is also incongruent with decisions of other federal courts throughout the country, which recognize that common law tort claims are not preempted if the plaintiff alleges violations of duties prescribed under the HMTA. The Second Circuit should clarify its holding in *Buono* and overrule the District Court to avoid a significant departure from the commonly accepted analysis of the HMTA's preemption provision.

The District Court's Decision must be overruled, as it causes drastic uncertainties in the hazardous materials transportation community. The District Court's Decision's cannot stand because it forces individuals and businesses, such as DCC, to self-insure against damages caused by the negligence of others.

# ARGUMENT

## I. DCC's Claims Are Consistent With This Court's Holding In *Buono*.

The Second Circuit recently addressed whether a plaintiff's specific tort claims were preempted under the Hazardous Materials Transportation Act, 49 U.S.C. § 5101, *et seq.* ("HMTA") in *Buono v. Tyco Fire Products, LP*, 78 F.4th 490 (2d Cir. 2023). *Buono* recognizes that the HMTA establishes a consistent, uniform standard of care for activity involving the transportation of hazardous materials, and that the express purpose of the HMTA is "to protect against the risks to life, property, and the environment that are inherent in the transportation of hazardous material in intrastate, interstate, and foreign commerce." 49 U.S.C. § 5101.

The question in *Buono*, however, was limited to whether the specific duties asserted by a plaintiff to support his State common law tort claims would impose standards for placards and warning labels that were inconsistent with the standards outlined in the HMTA. *Id.* at 494-95. It did not, however, broadly undercut all tort remedies for a private party injured by another party's failure to meet the standards of care established by the HMTA.

8

The plaintiff in *Buono* lost his leg when a cylinder containing a compressed hazardous material exploded. *Id*. at 494. The plaintiff sued the tank developer based on negligence and products liability theories that addressed the appropriate marking of the tank. *Id*. at 497. This Court held that the plaintiff's claims were preempted, however, because they did not allege any violations of the HMTA.[1]

This Court relied on the HMTA's preemption provision, 49 U.S.C. § 5125, in affirming the District Court's decision in *Buono*. HMTA § 5125(a) displaces State requirements if (a) compliance with both the State requirement and the HMTA is not possible, or (b) the State requirement is an obstacle to carrying out the requirements of the HMTA. Congress also expressly preempted State requirements that are not "substantively the same" as five specific categories of topics

---

[1] The plaintiff alleged as follows: "the defendants had a duty to warn the general public ... that the ... cylinder tank in question could not be operated in a reasonably foreseeable manner without causing substantial harm and resulting injury to plaintiff, including the risk that the tank would explode. ... [D]efendants failed in their duty to warn that foreseeable use of the ... cylinder tank would cause substantial harm and resulting injury, including the risk that the tank would explode. ... [T]he failure to warn by defendants directly and proximately caused substantial injury to plaintiff." *Buono*, 78 F.4th at 497.

addressed in the HMTA. *See* 49 U.S.C. § 5125(b). This Court specifically relied on § 5125(b)(1) in *Buono*, which preempts any "law, regulation, order, or other requirement of a State, political subdivision of a State, or Indian Tribe about any of [a list of] subjects, that is not substantively the same as a provision [of the HMTA]." 49 U.S.C. § 5125(b).[2] "As long as the subject-matter and substantive-similarity requirements are satisfied, a nonfederal claim is expressly preempted." *Buono*, 78 F.4th at 500 (citing § 5125(b)(1)).

In *Buono,* this Court found (and the plaintiff conceded) that none of the standards or theories posited by the plaintiff regarding the failure to warn (*i.e.*, whether there was a duty to provide particular warning

---

[2] The HMTA "subjects" identified by § 5125(b)(1) are as follows: "(A) the designation, description, and classification of hazardous material. (B) the packing, repacking, handling, labeling, marking, and placarding of hazardous material. (C) the preparation, execution, and use of shipping documents related to hazardous material and requirements related to the number, contents, and placement of those documents. (D) the written notification, recording, and reporting of the unintentional release in transportation of hazardous material and other written hazardous materials transportation incident reporting involving State or local emergency responders in the initial response to the incident. (E) the designing, manufacturing, fabricating, inspecting, marking, maintaining, reconditioning, repairing, or testing a package, container, or packaging component that is represented, marked, certified, or sold as qualified for use in transporting hazardous material in commerce."

labels or placards on the tank) were "substantially the same" as those specifically articulated in the HTMA. *See Buono*, 78 F.4th. at 500. Critically, the plaintiff in *Buono* conceded that the compressed air tank at issue met the HMR requirements. *See id.* at 498. The *Buono* plaintiff's attempt to champion a standard of care that exceeded the HMR's defined duties rightly subjected him to the HMTA's preemption provision. *Id.* at 499.

*Buono*'s holding is fully reconcilable with the conclusion that damages suits alleging violations of duties prescribed by the HMR are not preempted. Reason compels this reading of *Buono* not only because its holding is consistent with the express purpose of the HMTA, but also because it is in accord with the administrative framework and the preemption determinations delegated by Congress to the DOT.

Through the HMTA, Congress authorizes the Secretary of Transportation to designate materials as hazardous and promulgate regulations "for the safe transportation, including security, of hazardous material in intrastate, interstate, and foreign commerce." 49 U.S.C. § 5103(a)-(b). In turn, the DOT's Hazardous Materials Regulations ("HMR"), 49 CFR Parts 171 through 180, apply to all

11

aspects of the interstate movement of hazardous materials, including categorizing and classifying hazardous materials. The regulations impose various requirements on shippers and carriers regarding, *inter alia*, the packaging, marking and labeling of such materials, as well as prescribing detailed requirements and conduct relative to on- and off-loading such materials. *See* 49 C.F.R. § 171.1(a)–(c) (describing "pre-transportation functions," "transportation functions," and instances of "storage incidental to movement"). This regulatory program was intended to promote uniformity in the transport of hazardous materials and displace State laws that impose different duties. *See Buono*, 78 F.4th at 496.

Congress explicitly empowered DOT with the authority to interpret the HMTA's preemption provisions. *See* 49 U.S.C. § 5125(d) ("A person … directly affected by a requirement of a State … may apply to the Secretary … for a decision on whether the requirement is preempted by subsection (a), (b)(1), or (c) of this section or section 5119(f)."); *Wyeth v. Levine*, 555 U.S. 555, 576 n.9 (2009) (noting that § 5125(d) authorizes the Secretary of Transportation to decide whether State requirements are preempted by the HMTA). DOT exercises this

authority through the Pipeline and Hazardous Materials Safety
Administration ("PHMSA"). *See* 49 C.F.R. § 171.1; 49 C.F.R. § 1.97(b).
Indeed, *Buono* cites to and acknowledges the rational and duly
processed PHMSA opinion on the subject. *Buono*, 78 F.4th at 501 n. 4.
The PHMSA, as DOT's designee, followed its directive and clearly
pronounced that "[f]ederal hazardous material transportation law does
not preempt tort claims that ... a person who offered a hazardous
material for transportation in commerce or transported a hazardous
material in commerce failed to comply with applicable requirements in
the HMR." Common Law Tort Claims Concerning Design and Marking
of DOT Specification 39 Compressed Gas Cylinders ("Preemption
Determination–34"), 77 Fed. Reg. 39567-01, 2012 WL 2521268.

In Preemption Determination–34, the PHMSA addressed whether
tort claims concerning a DOT "specification cylinder" were preempted.
The PHMSA concluded that the tort claims in question were preempted
because the plaintiff claimed that "the manufacturer of a DOT
specification 39 compressed gas cylinder should have designed the
cylinder (or any component thereof) in a different manner than—or
marked or labeled the cylinder with any information beyond that

13

required by—49 CFR 178.65." *Id.* at 39570. The PHMSA took care,

however, to acknowledge that HMTA preemption:

> would not insulate a person who improperly, and in violation of
> the HMR, offers or transports a hazardous material in a
> packaging 'that is represented, marked, certified, or sold as
> qualified for use in transporting hazardous material in commerce.'
> <u>Nor would there be preemption of a common law tort action for
> damages when the packaging does not, in fact, meet the applicable
> design and manufacturing specification in the HMR.</u>

*Id.* at 39570 (emphasis added).

This Court was clearly aware of this Preemption Determination-

34 and acknowledged that its holding in *Buono* was consistent with it.

*Buono*, 78 F.4th at 501 n. 4 ("Although 49 U.S.C. § 5125(b)(1) is

unambiguous, we note that the PHMSA's interpretation of § 5125(b)(1)

is consistent with our approach."). While this Court did not articulate a

deference analysis, its recognition of PHMSA's determination is

compatible with so-called "*Skidmore* deference." *See Skidmore v. Swift

& Co.*, 323 U.S. 134 (1944) (the interpretations of an agency empowered

to decide how statutory terms apply to facts can be properly relied on by

courts and litigants for guidance - even on legal questions. *Id.*, at 139–

140.[3]

---

[3] The Supreme Court's recent decision in *Loper Bright Enterprises v.
Raimondo*, 144 S. Ct. 2244 (2024) leaves *Skidmore* and its progeny, *e.g.,*

## II. The District Court Erred In Its Interpretation of *Buono* And Improperly Dismissed DCC's Claims.

### A. The District Court improperly interpreted *Buono.*

DCC acknowledged in its underlying objection to KMT's motion to dismiss and at oral argument that its claims are "about" one of the enumerated subjects of duties prescribed in the HMTA. *See* 49 U.S.C. § 5125(b)(1)(B), and the District Court dismissed DCC's suit in reliance on HMTA § 5125(b), which preempts any "law, regulation, order, or other requirement of a State, political subdivision of a State, or Indian Tribe about any of [a list of] subjects, that is not substantively the same as a provision [of the HMTA]." The District Court, however, improperly expanded the application of *Buono* beyond its limited holding.

DCC alleges that KMT violated several express provisions of the HMR and caused significant property damage. *See* JA-70, Decision ("Throughout its complaint, Plaintiff repeatedly invokes the standards of the [HMR] set forth in 49 CFR 177.834 relating to the unloading of cargo tanks, and contends Defendant violated them."). DCC's remaining

*Gray v. Powell*, 314 U.S. 402 (1941) and *NLRB v. Hearst Publications, Inc.*, 322 U.S. 111 (1944) undisturbed and permits a reviewing court to consider well-reasoned administrative interpretations of legislation.

allegations do not cite a specific HMR provision but nonetheless allege

violations of duties prescribed by the HMR.[4] *See* JA-10, Compl., ¶ 12; 49

C.F.R. § 107.202(d) ("For purposes of this section, 'substantively the

same' means that the non-Federal requirement conforms in every

significant respect to the Federal requirement. Editorial and other

similar de minimis changes are permitted.") These allegations are not

preempted because they allege violations of duties that are either

identical or substantively the same as those prescribed by the HMR.

The lynchpin of the District Court's Decision hung on its

presumption that the alleged tort claims, sounding in negligence and

recklessness, "require a 'less culpable mental state' than the HMTA and

thus are not substantively the same as the HMTA … ." *See* JA-76,

Decision; 49 U.S.C. § 5123(a). The District Court relied entirely on a

discrete passage in *Buono* in supporting this conclusion, which provides:

> Buono does not allege what, if any, provision of the HMTA or
> HMR is 'substantively the same' as his common-law claims. In any

---

[4] To the extent that a dispute on this issue exists, that dispute is a
factual one that is not properly addressed in a motion to dismiss. *See*
*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d. Cir. 2010)
(reinstating claim and noting that the duty of a court in ruling on a
motion to dismiss "is merely to assess the legal feasibility of the
complaint, not to assay the weight of the evidence that might be offered
in support thereof.").

event, those claims would impose conditions beyond federal law, so they are not 'substantively the same.' Specifically, a civil violation of the HMTA or HMR must be committed 'knowingly' ... .

*Buono*, 78 F.4th at 500; *see* JA-77, Decision ([The Court] "remains bound by *Buono*'s holding that a common law negligence claim requires a lesser mental state than a civil violation of the HMTA, and therefore 'sweep[s] more broadly than federal law.'"); JA-51, Transcript ("THE COURT: The problem is we're stuck with it, I think.").

The District Court erred when it relied on this *dictum* because: 1) an alleged "lesser mental state" does not sweep more broadly than federal law; and 2) that reading conflicts with the proper interpretation of the preemption provision of the HMTA.

> **1. The particular common law mental state requirements do not sweep more broadly than what is required by Federal law.**

Given the ambiguity in the statute (*i.e.*, whether § 5123 applies to private causes of action) and the ambiguous dicta in *Buono*, a careful review of the legislative history of the Hazardous Materials Transportation Uniform Safety Act of 1990 ("HMTUSA") is appropriate. The statutory definition of "knowingly" was added in the HMTUSA in 1990. The HMTUSA defined the term "knowingly" to mean, as it does

17

today, "that (A) a person has actual knowledge of the facts giving rise to the violation; or (B) a reasonable person acting in the circumstances, exercising due care, would have such knowledge." H. Report No. 101–444, Part 1, Committee on Energy and Commerce, at 44 (Apr. 3, 1990) (1990 WL 259162). This legislative history, which was cited by the Third Circuit in *Roth v. Norfalco*, 651 F.3d 367, 377 (3d Cir. 2011) and in DCC's objection to KMT's motion to dismiss, indicated that "[b]y including this provision, the Committee intends to cover violations that <u>are committed negligently</u> (as well as violations which are committed by persons who have actual knowledge)." *Id.* (emphasis added). The legislative history further defined Congress's intent:

> The definition of 'knowingly' is intended to negate any inference that the term only encompasses actions based on actual knowledge or reckless actions. … Under the bill's definition of 'knowingly', the Secretary will be able to seek civil penalties for actions or omissions that are committed negligently, as well as those which are committed with actual knowledge, in violation of the HMTA, or orders or regulations issued thereunder.

*Id.* This legislative history addresses the inquiry head-on, and plainly explains that the Federal mental state requirement (to the extent that § 5123 applies to private causes of action) is the *equivalent* of common law negligence and recklessness.

18

Other agency authorities mirror this approach. The Research and Special Programs Administration ("RSPA") and DOT issued a formal interpretation in 1998 indicating that, in the event of agency enforcement, "the legal standard remains the knowledge that a reasonable person acting in the circumstances and exercising reasonable care would have." Hazardous Materials: Formal Interpretation of Regulations, 63 Fed. Reg. 30411, 30412, 1998 WL 284793; *see In The Matter Of: Mountain States Trailer, Inc.*, (U.S. DOT No. 1010685) 2013 WL 7086986, at *2 (recognizing that section 5123 is "akin to a negligence standard"). This approach is consistent with the PHMSA's Preemption Determination–34, *supra*, which clearly indicates that tort actions based on violations of the HMR are not preempted.

## 2. The District Court's reading of Buono conflicts with the proper interpretation of the preemption provision of the HMTA.

The PHMSA determination that a negligence suit, which conforms to the HMTA's standards of care, survives preemption was not given a modicum of deference by the District Court because the District Court discerned *Buono* to be irreconcilable with Preemption Determination–34 ("Plaintiff's citation to a relevant agency interpretation likewise

19

cannot overcome *Buono*. ... But the Court is compelled to abide by *Buono*, which <u>clearly held that a common law negligence claim required a 'less culpable' mental state than the HMTA</u>." JA-78, Decision (emphasis added). DCC submits that footnote 4 of *Buono* demands the opposite conclusion.

Additionally, DCC submits that the passage from *Buono* relied on by the District Court was dicta and immaterial to its holding. The parties in *Buono* did not meaningfully brief the issue before the Second Circuit. The only reference is an unsupported statement in the defendant/appellee's brief, which states that "a cause of action under the HMTA requires a 'knowing' or 'reckless' violation of the statute or associated regulations, whereas Buono's claims are for negligence and strict product liability." *Brief of Defendant-Appellee*, 2022 WL 16543893, *22 (Oct. 18, 2022). At oral argument, Judge Nagala conceded that she went "back to the briefs in Buono to see if this argument about the statutory definition for knowingly was made there. <u>Frankly, I don't think it was before the court</u>, and so the question is by silence is the court holding that knowingly is different from a negligence standard." JA-33, Transcript (emphasis added).

20

The issue was not raised by the district court below, either. *See Buono v. Poseidon Air Systems, et al.*, 2022 WL 744050 (S.D.N.Y. March 11, 2022). That court stated that the "material fact in issue" was whether the tank met DOT specifications. *Id*. at *3 n. 4. The district court rightly noted that the analysis "is a comparison of the common law duties raised in this action to any of the statutory provisions, regulations, or directives as set forth in § 5125(b)(1) which supplies the preemption answer." *Id*. at *9.

DCC's claims do not run afoul of this comparative analysis and, therefore, DCC respectfully requests that the Second Circuit clarify its holding in *Buono* and reverse the District Court's Decision.

## B.   The District Court's interpretation of *Buono* would cast the Second Circuit as an outlier amongst the other circuits.

The District Court's Decision conflicts with durable precedents throughout the country involving the survival of common law negligence claims challenged with federal preemption. The District Court's Decision, for example, is inconsistent with Southern District of New York's ruling in *Poliskie Line Oceaniczne v. Hooker Chem. Corp.,* 499 F. Supp. 94 (S.D.N.Y. 1980). In that case, the district court found,

21

after a court trial, that the defendant negligently violated the HMR and was liable to plaintiff. *Id.* at 97; *see also Key v. Liquid Energy Corp.,* 906 F.2d 500, 506 (10th Cir. 1990) (affirming jury verdict in favor of injured truck drivers finding shipper negligent per se for conduct regulated by the HMR; specifically, by loading pressurized butane condensate into a tanker that was not rated for that pressurized material).

If the District Court's interpretation of *Buono* stands, our Circuit will be out of step with cases from nearly every other circuit. The Third Circuit decision most contemporaneous to *Buono* on the topic, *Roth v. Norfalco*, 651 F.3d 367 (3d Cir. 2011), is on point. In *Roth*, the Third Circuit found that the plaintiff's claims were preempted because it was "undisputed that [defendant] fully complied with the HMR requirements for model 111AW tank cars." *Id.* at 372. The *Roth* court correctly recognized that Roth's allegations sought to impose duties on the defendant (i.e., a safer *design* of a container), which lacked any corresponding federal standard and were not substantially the same as the design requirements under the HTMA and HMR. *Id.* at 377 ("Roth's design requirement would impose conditions beyond those imposed by

22

the HMR and, therefore, it does not conform in every significant respect to the federal regulatory scheme.").

Unlike in *Buono,* where the parties agreed that "the tank was manufactured in compliance with U.S. Department of Transportation requirements for the transportation of hazardous materials in commerce ...", and, unlike in *Roth,* where there was no dispute that defendant "fully complied with the HMR requirements for model 111AW tank cars", DCC alleges that KMT violated certain standards prescribed by the HMR and, in doing so, caused DCC to incur significant property damage. *See Buono,* 78 F.4th at 494 n. 1; *Roth,* 651 F.3d at 372. Again, while DCC's allegations are undeniably "about" a topic covered by the HMR – the conduct of KMT's driver during the offload process – they are entirely consistent with the HMR duties and are, therefore, not preempted. *See Diehl v. CSX Transportation, Inc.*, 349 F. Supp. 3d 487, 505 (W.D. Pa. 2018) ("Furthermore, the Court has found no authority indicating that complying with both Pennsylvania tort law and a requirement of the HMTA would not be possible or that Pennsylvania tort law 'is an obstacle to accomplishing and carrying out' the HMTA.").

Other district court decisions have subsequently relied on *Roth*. Within the Sixth Circuit, in *In re East Palestine Train Derailment*, 2024 WL 1094616 (N.D. Ohio March 13, 2024), the district court held that the plaintiff's negligence claims were not preempted because it alleged that the defendant "failed to comply with the requirements of the HMTA, and [plaintiff] does not seek to impose duties on [defendant] exceeding those requirements." The district court reasoned, based on the Third Circuit's holding in *Roth*, that States may enforce their "common laws, such as the negligence claims at bar, 'that are the same as their Federal counterparts.'" *Id.* at *9 (citing *Roth*, 651 F.3d at 377); *see* 49 U.S.C. § 5125(h).[5]

Another case within the Sixth Circuit (Eastern District of Tennessee) turned to *Roth* for guidance and ultimately held that "a common law negligence action is not preempted under the HMTA … ."

---

[5] If HMTA § 5123 applies to private causes of action, and the mental state prescribed by the HMTA is not substantively the same as the mental state required to prove a common law tort action, then § 5125(h) serves as a carve out for the mental state required to prove State common law tort actions. *See* 49 U.S.C. § 5125(h) (providing that HMTA preemption "does not apply to any procedure, penalty, <u>required mental state</u>, or other standard utilized by a State, political subdivision of a State, or Indian tribe to enforce a requirement applicable to the transportation of hazardous material.") (Emphasis added).

*Tipton v. CSX Transp., Inc.*, 2016 WL 11501426, *15 (E.D. Tenn. July 7, 2016). The district court in *Tipton* reasoned that the plaintiff alleged violations of the HMR, therefore "the duties plaintiffs allege [defendant] violated are substantively the same as those in the HMR, and should not be preempted." *Id.*

At least one district court decision in the Sixth Circuit has explicitly disagreed with the District Court's approach in its Decision. In *Merrit v. BASF Corporation*, 2023 WL 3230983 (S.D. Ohio May 3, 2023), the district court denied the defendants' motion to dismiss and motion for judgment on the pleadings. The plaintiff in this case, Merritt, unloaded a railway tank car and was injured by a hazardous material release from the tank car, which "doused" him and caused personal injuries. *Id.* at *1. The plaintiff brought a negligence claim and a negligence per se claim against both defendants. *Id.* One defendant argued that the difference in *mens rea* requirements justifies federal preemption, but the district court disagreed, noting that "the Ohio [*mens rea*] requirement and the federal requirement don't sound all that different. But, more importantly, the Court concludes that this matter can proceed only as to claims where an HMTA or HMR violation

has occurred." *Id.* at \*5 (finding that allegations of HMR violations can support a negligence claim and are not preempted); *see also National Power Corporation v. FAA*, 864 F.3d 529, 534 (7th Cir. 2017) (recognizing that a "reasonable person" in National Power's position would have been aware that the hazardous material shipping paper was incorrect, therefore it was aware of the facts giving rise to a HMR violation). This is on all fours with the result propounded by DCC.

Trial courts in the Fifth Circuit are also in line with the conclusion that common law tort claims are not preempted if the claims allege violations of the HMR. *See, e.g.*, *Riley v. Alabama Great Southern R.R. Co.*, 2002 WL 31175209, \*4 (E.D. La. Sept. 27, 2002) ("Plaintiffs' claim that the vapor valve was defective conflicts with the federal regulations only if the claim is that Vulcan's actions were negligent even if the vapor valve's design, manufacture and inspection met all federal regulations. … Plaintiffs' state negligence action poses no obstacle to accomplishing or carrying out the prescribed federal regulations."); *Whitfield v. Triad Transport, Inc.*, 2008 WL 139082 (E.D. Ark. Jan. 10, 2008) (citing the Eastern District of Louisiana's decision in *Riley* and noting that "[t]he [HMTA] has a preemption clause, but in

26

its 30-year history, it has never been held to completely preempt state common law claims."); *Galjour v. General American Tank Car Corp.,* 1991 WL 121193 (E.D. La. 1991) (reviewing tort claim and noting that "[w]hile a violation of [the HMR] does not create a private right of action, the regulations may serve as evidence for determining the standard of care to be applied to a person engaged in shipping hazardous materials.").

Similar to those cases from the Fifth Circuit, the Fourth Circuit has acknowledged that, in a claim for damages for personal injuries based on negligence, violations of the HMR "are relevant only through incorporation into the state negligence action …" but do not afford the federal court with jurisdiction based on a federal question. *Clark v. Velsicol Chemical Corp.,* 944 F.2d 196 (4th Cir. 1991), *cert. denied,* 502 U.S. 1096 (1992) (dismissing claim based on lack of subject matter jurisdiction without prejudice to any action plaintiffs may bring in state court).

A First Circuit district court decision also supports DCC's position. In *Ordner ex rel. Ordner v. K-H Corp.*, 74 F. Supp. 2d 150 (D. R.I. 1999), the district court addressed on summary judgment whether

plaintiff's common law tort claims were preempted by the HMTA. The plaintiff in *K-H Corp.* sued for personal injuries sustained when a cargo tanker, which was carrying hazardous materials, rolled over and caused a gasoline spill. *Id*. at 151. The gasoline ignited and caused the plaintiff severe burn injuries. *Id*. The plaintiff alleged that the defendant's cargo tanker did not comply with certain provisions of the HMR that apply to the general design and construction requirements applicable to a model MC 306 cargo tank. *Id*. at 154. The defendant moved for summary judgment on the basis that the plaintiff's common law claim sought to impose requirements that were not "substantively the same" as the applicable HMR regulation. *Id*. at 155.

The district court denied the defendant's motion for summary judgment because the plaintiff's claims enforced the applicable HMR regulations, "leaving the preemption provisions of § 5125(b) inviolate." *Id*. at 156. The district court also concluded that section 5125(a) did not preempt the plaintiff's claims because "[i]t is clear that a suit that seeks to enforce compliance with the relevant regulations does not fall within the strictures of § 5125(a)(1)." *Id*. at 158. Critically, the district court emphasized that this holding "preserves, to a limited degree, this state's

power to protect the general health and welfare of its citizenry." *Id.* at 159; *see also In re Montreal Maine & Atlantic Railway, Ltd.*, 574 B.R. 381, 394 (Bankr. D. Me. 2017), *leave to appeal denied*, *Canadian Pacific Railway Co. v. Keach*, 2017 WL 4845733 (D. Me. Oct. 26, 2017) (denying motion to dismiss because the plaintiff had alleged "a plausible negligence claim based in part on [the defendant's] failure to comply with 49 C.F.R. § 171.2(f).").

A district court case from the Eleventh Circuit, *Henderson v. GATX Corp.*, 2012 WL 12905101 (M.D. Fla. Mar. 22, 2012), distinguished the Third Circuit's holding in *Roth* and denied the defendant's motion for summary judgment. In *Henderson*, the plaintiff sued for personal injuries caused by a pipe cap that burst from a rail car, causing the release of hazardous materials, which injured the plaintiff.

> In <u>Roth</u>, it was undisputed that the Defendant complied with the Act. This is a vital distinction. In the present case, if it were undisputed that Nyrstar complied with the Act, this Court would, as in <u>Roth</u>, find preemption <u>and</u> grant Defendant's Motion for Summary Judgment. However, in the present case, the Court is faced with conflicting accounts of the events leading to Plaintiffs' injuries and conflicting arguments concerning whether Defendant complied with the Hazardous Materials Transportation Act and attendant federal regulations. Even after finding that preemption

29

applies, the Court must deny the Motion for Summary Judgment and send this case to the jury for a trial.

*Id*. at *4 (emphasis in original).

DCC respectfully requests that this Court clarify its holding in *Buono* to avoid continued inconsistencies in district court rulings in the Second Circuit and beyond.

## III. The District Court's decision yields an unworkable result that forces individuals and private businesses to self-insure against property damage.

The District Court's Order leaves individuals and private businesses, like DCC, without a remedy for property damage resulting from violations of the HMR. This is an untenable result that contradicts Congress's express purpose of the HMTA, which was to "to protect against the risks to life, property, and the environment that are inherent in the transportation of hazardous material in intrastate, interstate, and foreign commerce." 49 U.S.C. § 5101. Absent intervention by this Court, both individuals and private businesses like DCC are left to self-insure against the negligence of others.

## CONCLUSION

DCC seeks an order reversing the District Court's Decision and holding that its State common law tort claims for negligence and

recklessness are not preempted. DCC's claims are not preempted

because they comply with the HMTA and the Second Circuit's decision

in *Buono*. The District Court's Decision causes an unworkable result

and contravenes the express intent of the HMTA. DCC respectfully

requests that the Second Circuit reverse the District Court's Decision.

Dated: September 3, 2024

        RESPECTFULLY SUBMITTED,
        PLAINTIFF–APPELLANT,
        DCC PROPANE, LLC

By:    /s/ *Gerald T. Giaimo*
        David J. Monz, Esq.
        Gerald T. Giaimo, Esq.
        UPDIKE, KELLY & SPELLACY, P.C.
        *Attorneys for Plaintiff-Appellant*
        265 Church Street, 10th Floor
        New Haven, Connecticut 06510
        (203) 786-8300

## **CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and the word limitation of Local Rule 32.1(a)(4)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,059 words.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared using 14-point Century Schoolbook proportional font.

Dated: September 3, 2024

By: *   /s/ Gerald T. Giaimo   *
Gerald T. Giaimo, Esq.

## **<u>CERTIFICATE OF SERVICE</u>**

This is to certify that on this date a copy of the foregoing was filed electronically through the Court's CM/ECF system and served by mail on any party unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to any party unable to accept electronic filing.

Dated: September 3, 2024

By:  /s/ *Gerald T. Giaimo*
           Gerald T. Giaimo, Esq.